## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

REBECCA TUTEUR, ANTHONY VITI, and
MATTHEW NAPOLI, on behalf of themselves and all
others similarly situated,

                        Plaintiffs,

           - vs -

METROPOLITAN OPERA ASSOCIATION, INC.,

                      Defendant.

Case No: 1:23-cv-03997-AS

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ...............................................................................1

II.    RELEVANT FACTUAL ALLEGATIONS .........................................................2

    A.  The Complaint Does Not Allege Data Security-Related Misrepresentations................2

    B.  The Privacy Policy Cited in the Complaint Does Not Contain Promises Related to Safeguard Data from Cybercriminals ..............................................................4

    C.  The Complaint Fails to Indicate Any Actual Benefit Conferred Upon the Met in Return for Receipt of Plaintiffs' PII..............................................................5

    D.  Plaintiffs Fail to Allege How Future Modifications to the Met's Data Security Measures Relate to the Compromised PII that is the Subject of this Litigation ...........5

III.   LEGAL ARGUMENT .............................................................................................5

    A.  Plaintiffs' First Cause of Action, Premised on an Alleged Violation of General Business Law § 349, Must Be Dismissed Because the Complaint Fails to Specify any Materially Misleading Deceptive Acts or Practices Directed at Consumers .........7

        1.  The Complaint Fails to Specify Deceptive Statements or Allege Exposure to Deceptive Statements...............................................................................8

        2.  The Failure to Specify Deceptive Statements is Fatal to Plaintiffs' GBL § 349 Claim ...........................................................................................9

        3.  The Failure to Allege Exposure to Deceptive Statements is Fatal to Plaintiffs' GBL § 349 Claim...........................................................................11

    B.  Plaintiffs' Third Cause of Action for Breach of Contract Must Be Dismissed Because the Met Did Not Enter Into a Contract Regarding Data Security.................12

    C.  Plaintiffs' Fifth Cause of Action for Unjust Enrichment Must Be Dismissed Because the Met Did Not Unjustly Retain Any Benefit and the Cause of Action is Duplicative .................................................................................................14

    D.  Plaintiffs' Sixth Cause of Action for Declaratory Judgment Must Be Dismissed Because Plaintiffs Do Not Have Standing and the Cause of Action is Duplicative ....16

IV.   CONCLUSION......................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015)...........................................................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................5, 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................5, 6

*Bildstein v. Mastercard Int'l Inc.*, 329 F. Supp. 2d 410 (S.D.N.Y. 2004).......................6

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) ........................7

*Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475 (1989)..............13

*Corcoran v. N.Y. Power Auth.*, 935 F. Supp. 376 (S.D.N.Y. 1996) ..................................6

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012)...14, 15

*Dane v. United Healthcare Ins. Co.*, 974 F.3d 183 (2d Cir. 2020)...................................6

*Del-Orden v. Bonobos, Inc.*, No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y., Dec. 20, 2017)..............................................................................................................9

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010) ........................................9

*Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8 (2d Cir. 2019) ...........................................12

*Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 Fed.Appx. 37 (2d Cir. 2014)...........13

*In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454 (S.D.N.Y. 2022) .......................11, 12

*In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ........12

*In re GEICO Customer Data Breach Litig.*, No. 21-CV-2210-KAM-SJB, 2023 WL 4778646 (E.D.N.Y., July 21, 2023)........................................................................10, 11

*In re Joint E. & S. Dit. Asbestos Litig.*, 14 F.3d 726 (2d Cir. 1993) ..............................16

*In re Waste Mgmt. Data Breach Litig.*, No. 21CV6147 (DLC), 2022 WL 561734 (S.D.N.Y., Feb. 24, 2022)............................................................................................15

*Mastafa v. Chevron Corp.*, 770 F.3d 170 (2d Cir. 2014)................................................6

*Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60 (2d Cir. 2018)................14

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co*., 875 F.3d 107 (2d Cir. 2017) .............................7

*Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353 (S.D.N.Y. 2016) ...............................................7

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20
(1995) ............................................................................................................................................7

*Rand v. Travelers Indem. Co*., No. 21 CV 10744 (VB), 2022 WL 15523722 (S.D.N.Y.,
Oct. 27, 2022) ........................................................................................................................13, 16

*Rider v. Uphold HQ Inc*., No. 22CV1602 (DLC), 2023 WL 2163208 (S.D.N.Y.,
Feb. 22, 2023) .............................................................................................................9, 10, 11, 14

*Rudolph v. Hudson's Bay Co*., No. 18-CV-8472 (PKC), 2019 WL 2023713 (S.D.N.Y. May
7, 2019) ........................................................................................................................................17

*Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009) ................................................................7

*Starke v. SquareTrade, Inc*., 913 F.3d 279 (2d Cir. 2019) ..............................................................14

*Teller v. Bill Hayes, Ltd*., 630 N.Y.S.2d 769 (2d Dep't 1995) ..........................................................7

*Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) .................................. 16, 17

**Statutes**

New York General Business Law ("GBL") § 349 ............................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 4, 9, 21

Fed. R. Civ. P. 12(b)(6) ................................................................................... 4, 8, 12, 21

Defendant Metropolitan Opera Association, Inc. ("Defendant" or "the Met"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss the First (Violation of GBL § 349), Third (Breach of Express Contract) and Fifth (Unjust Enrichment) Causes of Action contained within Plaintiffs' Amended Consolidated Class Action Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and Plaintiffs' Sixth (Declaratory Judgment) Cause of Action contained within the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## I.        PRELIMINARY STATEMENT

The Met was the victim of a cyberattack in December 2022 during which unauthorized criminal actors infiltrated the Met's computer systems.  Plaintiffs allege that the criminal actors exfiltrated data that contained personally identifiable information ("PII") pertaining to both customers and current and former employees of the Met.  But of course, the mere exfiltration of data does not automatically support Plaintiffs' asserted causes of action.  Dismissal of Plaintiffs' First, Third, Fifth and Sixth causes of action is warranted for the following reasons.

**First Cause of Action – Alleged Violation of GBL § 349**: The Complaint fails to specify deceptive statements or allege exposure by Plaintiffs to any deceptive statements.  This claim is therefore subject to dismissal.

**Third Cause of Action – Breach of Contract**: The parties did not enter into a contract with regard to data security.  The Complaint fails to identify any contractual representations as to safeguarding data, other than general comments in the Met's Privacy Policy that the Met uses "reasonable organizational, technical, and administrative measures to protect Personal Information."  In fact, the Privacy Policy explicitly states that "no data transmission or storage

1

system can be guaranteed to be 100% secure." Such general statements fail to create a contract on this subject. This claim must therefore be dismissed.

**Fifth Cause of Action – Unjust Enrichment**: PII provided to the Met by Plaintiffs was for the purpose of Plaintiffs receiving employment from the Met or purchasing goods or services from the Met. The Complaint fails to address how the Met profited or benefited by possessing Plaintiffs' PII. This claim is therefore subject to dismissal.

**Sixth Cause of Action – Declaratory Judgment**: Plaintiffs allege injury as a result of their PII being compromised in December 2022 due to the Met's culpable conduct. Plaintiffs do not have standing to seek a declaratory judgment that the Met must enhance its data security practices because any such measures would not address the Met's alleged culpable conduct in or before December 2022. As a result, this claim is subject to dismissal.

## II.    RELEVANT FACTUAL ALLEGATIONS

Plaintiffs Rebecca Tuteur, Anthony Viti, and Matthew Napoli allege that their PII was compromised because of the Met's failure to protect such data. However, they fail to allege (1) any data security-related misrepresentations by the Met, (2) that the Met made any promises with regard to data security, (3) any actual benefit conferred upon the Met in return for receipt of Plaintiffs' PII, or (4) how future modifications to the Met's data security measures relate to the compromised PII that is the subject of this litigation.

### A. The Complaint Does Not Allege Data Security-Related Misrepresentations

The Complaint asserts that the Met engaged in the following "deceptive acts or practices" in the conduct of its business:

   a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class members' PII, which was a proximate and direct cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents involving other organizations, which was a direct and proximate cause of the Data Breach;

c. Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class members' PII, including by implementing and maintaining reasonable security measures;

d. Failing to timely and adequately notify Plaintiffs and Class members of the Data Breach;

e. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and Class members' PII; and

f. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

*See* Complaint, ECF Doc. No. 18, at ¶ 108.

According to the Complaint, the "deceptive acts [and] practices" indicated above constitute "representations and omissions regarding data security [which] were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of PII." *Id*. at ¶ 109. Despite this assertion, the Complaint fails to identify any statements or communications by the Met aside from generally pointing to the privacy policy contained on the Met's website ("Privacy Policy"), as follows:

"This information is collected pursuant to The Met's privacy policy, a document which is incorporated into each and every use of The Met's website. The Met's website states, '[b]y using this site, you agree to our Privacy Policy' on nearly every page of the website." *Id*. at ¶ 21.

"In its privacy policy, Defendant acknowledges that it is the party responsible for the management of Plaintiffs' and Class members' PII, and promises not to disclose such information except for in limited circumstances, including to comply with applicable law and regulations, to cooperate with public and government authorities, to cooperate with law enforcement, for other legal reasons, and/or in connection with a sale or business transaction – none of which is applicable here." *Id*. at ¶ 22.

Although Plaintiffs generally reference the Privacy Policy, the Complaint is silent as to (1) how Plaintiffs were deceived about data security, (2) any misrepresentations or omissions by the Met regarding its data security measures, and (3) whether Plaintiffs read or relied on any statements by the Met or took any actions in response.

**B. The Privacy Policy Cited in the Complaint Does Not Contain Promises Related to Safeguard Data from Cybercriminals**

The Complaint alleges that Plaintiffs and the Met "entered into a valid and enforceable contract" which included "promises by Defendant to secure, safeguard, and not disclose Plaintiffs' and Class members' PII." *Id.* at ¶ 137. According to Plaintiffs, the Met's promises arose out of the Privacy Policy:

> "Defendant's Privacy Policy memorialized the rights and obligations of Defendant and its current and former employees and customers. This document was provided to Plaintiffs and Class members in a manner in which it became part of the parties' agreement." *Id.* at ¶ 138.

Security-related representations contained within the Privacy Policy are limited to the following three sentences:

> We seek to use reasonable organizational, technical, and administrative measures to protect Personal Information within our organization. Unfortunately, no data transmission or storage system can be guaranteed to be 100% secure. If you have reason to believe that your interaction with us is no longer secure, please immediately notify us in accordance with the "*Contacting Us*" section below.

https://www.metopera.org/user-information/privacy-policy (emphasis added).

The Privacy Policy is directly incorporated into the Complaint in support of Plaintiffs' assertion that there existed a data security-related contract.

**C. The Complaint Fails to Indicate Any Actual Benefit Conferred Upon the Met in Return for Receipt of Plaintiffs' PII**

The Complaint generally alleges that the Met enriched itself through the receipt of Plaintiffs' PII.  *Id*. at ¶¶ 159-161.  However, the Complaint concedes within these allegations that "Plaintiffs provided Defendant with their PII" in order to "either work[] as employees and/or purchase[]goods from Defendant."  *Id*. at ¶ 159.  The Complaint fails to allege that the Met profited in connection with Plaintiffs' PII or received a benefit arising out of the obligation to maintain Plaintiffs' PII.  Rather, the Met's possession of such PII was merely incidental to Plaintiffs' employment or purchase of goods.

**D. Plaintiffs Fail to Allege How Future Modifications to the Met's Data Security Measures Relate to the Compromised PII that is the Subject of this Litigation**

As stated in the Complaint, the cyber incident that is the subject of this litigation occurred in December 2022.  *Id*. at ¶ 3.  Plaintiffs allege they have and/or will be injured as a result of the sale and improper use by cybercriminals of PII that was compromised in the December 2022 incident.  *Id*. at ¶¶ 85-90.  The Complaint does not, however, indicate in any manner how future modifications to the Met's data security measures would relate to the December 2022 theft of Plaintiffs' PII.

**III.    LEGAL ARGUMENT**

Plaintiffs' First (Violation of GBL § 349), Third (Breach of Express Contract), and Fifth (Unjust Enrichment) Causes of Action are subject to dismissal pursuant to Rule 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*. (citation omitted).   While evaluating a motion to dismiss, a court must "accept as true all factual allegations and draw from them all reasonable inferences," but a court is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. United Healthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020) (internal modifications omitted).   When conclusory statements are eliminated, the complaint must do more than "create[] a suspicion of a legally cognizable right of action" and must elevate the "right to relief above the speculative level." *Twombly*, 550 U.S. 544 at 555 (2007)   (citations omitted). Dismissal is the proper remedy when a plaintiff fails to plead all elements of a cause of action.   *See*, *e.g.*, *Bildstein v. Mastercard Int'l Inc*., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) ("Dismissal is proper when the plaintiff fails to plead the basic elements of a cause of action.") (citing *Corcoran v. N.Y. Power Auth*., 935 F. Supp. 376, 382 (S.D.N.Y. 1996)).

Plaintiffs' Sixth (Declaratory Judgment) Cause of Action is subject to dismissal based on lack of standing.   Because standing is a jurisdictional matter, a motion to dismiss for lack of standing is properly brought under Rule 12(b)(1), as the district court "lacks the statutory or constitutional power to adjudicate it." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (internal citation omitted).   With regard to Plaintiffs' Declaratory Judgment Cause of Action, the Complaint fails to sufficiently plead any factual material showing that they have suffered a concrete injury-in-fact sufficient to give rise to standing under Article III of the United States Constitution. The Court should therefore dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**A. Plaintiffs' First Cause of Action, Premised on an Alleged Violation of General Business Law § 349, Must Be Dismissed Because the Complaint Fails to Specify any Materially Misleading Deceptive Acts or Practices Directed at Consumers**

New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." GBL § 349(a).  To maintain a cause of action under GBL § 349, a plaintiff must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (citation omitted).  Deceptive acts and practices, whether representations or omissions, are "defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted).

As explained by the Second Circuit, "[t]he New York Court of Appeals' adoption of an objective definition of deceptive acts and practices . . . which may be determined as a matter of law or fact (as individual cases require), was intended to avoid a tidal wave of litigation against businesses that was not intended by the Legislature." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (internal quotations omitted).  "Practices courts have found to be deceptive include [consumer sales transactions such as] 'false advertising, pyramid schemes, deceptive preticketing, misrepresentation of the origin, nature or quality of the product, false testimonial, deceptive collection efforts against debtors, deceptive practices of insurance companies, and 'Bait and Switch' operations.'" *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 373 (S.D.N.Y. 2016) (quoting *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 773 (2d Dep't 1995)).

1. **The Complaint Fails to Specify Deceptive Statements or Allege Exposure to Deceptive Statements**

The Complaint contains a list of six acts allegedly committed by the Met which are claimed to be "deceptive acts or practices," and which form the basis for Plaintiffs' GBL § 349 cause of action.  As set forth above, Plaintiffs generally allege a failure by the Met regarding its data security practices, along with a failure to inform Plaintiffs of such practices or timely provide notification of the December 2022 incident.  *See* Complaint, ECF Doc. No. 18, at ¶ 108.

As set forth in Defendant's Exhibit A, the Complaint fails to plausible allege (1) that the Met directed deceptive acts at consumers or (2) that any of the Met's acts were materially misleading or that the Plaintiffs were misled.  Rather, in support of the vague allegations that the Met made material misrepresentations about its data security, Plaintiffs point only to the Met's Privacy Policy, which according to the Complaint states that the Met "acknowledges that it is the party responsible for the management of Plaintiffs' and Class members' PII, and promises not to disclose such information except in limited circumstances, including to comply with applicable law and regulations, to cooperate with public and government authorities, to cooperate with law enforcement, for other legal reasons, and/or in connection with a sale or business transaction."  *Id*. at ¶¶ 21-22.

Notably, Plaintiffs' Complaint (1) fails to explain how the Privacy Policy deceived Plaintiffs about data security in any material way, (2) fails to allege that the Met, through its Privacy Policy or otherwise, made any misrepresentations or committed any omissions related to its data security measures, and (3) fails to assert that Plaintiffs read or relied on the Privacy Policy or otherwise took any actions in response to any representations or omissions made by the Met.  In fact, the Privacy Policy's "Security" section states the following:

> We seek to use reasonable organizational, technical, and administrative measures to protect Personal Information within our organization. <u>Unfortunately, no data transmission or storage system can be guaranteed to be 100% secure.</u>  If you have reason to believe that your interaction with us is no longer secure, please immediately notify us in accordance with the "*Contacting Us*" section below.

https://www.metopera.org/user-information/privacy-policy (emphasis added).

The Privacy Policy is directly incorporated into the Complaint in support of Plaintiffs' assertion that there existed a data security-related contract, and therefore the Court may consider the Privacy Policy in deciding this Motion to Dismiss.  *Id.* at ¶¶ 21-22 including footnotes 9-10. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  More specifically, the court may consider a website incorporated by reference into a complaint on a motion to dismiss.  *See Del-Orden v. Bonobos, Inc.*, No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *1 (S.D.N.Y., Dec. 20, 2017) (collecting cases).

### 2. The Failure to Specify Deceptive Statements is Fatal to Plaintiffs' GBL § 349 Claim

Courts have dismissed GBL § 349 claims founded on virtually identical allegations. Notably, this Court recently dismissed a GBL § 349 cause of action because the plaintiff "failed to identify any specific deceptive statement [the defendant] made, or the additional disclosures [the defendant] should have made."  *See Rider v. Uphold HQ Inc.*, No. 22CV1602 (DLC), 2023 WL 2163208, at *4 (S.D.N.Y., Feb. 22, 2023).  That claim was dismissed despite the plaintiffs' familiar generic assertions that the defendant violated GBL § 349 by "misrepresenting, both by affirmative representation and by omission, the safety of its systems and services," by "fail[ing] to give timely

warnings and notices," and by "failing to implement reasonable and appropriate security measures." *Id.*

The plaintiffs in *Rider* further pointed to "(1) the nine separate statements referenced in [the complaint]; (2) [the defendant's] promise to implement phone-based support for users whose accounts had become compromised; (3) [the defendant's] representation to consumers that it was PCI DSS compliant; and (4) [the defendant's] general representations regarding the strength of its security protocols" in support of their argument that they had identified "multiple misrepresentations and omissions with specificity." *Id.* The *Rider* court found that "beyond these broad conclusory allegations, plaintiffs never specif[ied] what misrepresentations defendants made … [or] how [the defendant's] statements were 'deceptive' in any material way or [provided] any facts to suggest that [the defendant's] website misled them." *Id.* ("For instance, none of the statements to which the plaintiffs point describe the process by which customers will identify the Device to be used in [two factor authentication], much less do so inaccurately. As such, plaintiffs' GBL § 349 claim is insufficiently particular."). The *Rider* court also noted that a supposed violation of the FTC Act cannot provide a predicate for a GBL § 349 claim, because the FTC Act does not contain a private right of action. *Id.* ("[T]hese statutes [do not] contain[] a private right of action. As a result, they may not serve as predicates for § 349 claims.").

Likewise, in *In re GEICO Customer Data Breach Litig.*, the district court dismissed a GBL § 349 cause of action because there was no customer-facing deceptive statement, despite allegations that the defendant engaged in deceptive acts by "omitting, suppressing, and concealing the inadequacy of [its] security protections." No. 21-CV-2210-KAM-SJB, 2023 WL 4778646, at *16 (E.D.N.Y., July 21, 2023). According to the court, "[s]uch conclusory pleading and argument—without explanation about how such a vanilla-statement constitutes a deceptive act—

is insufficient to state a § 349 claim." *Id*. Similarly, the Supreme Court for the County of New

York granted the defendants' motion to dismiss a GBL § 349 cause of action in *Abdale v. N. Shore*

*Long Island Jewish Health Sys., Inc*. explaining as follows:

> "[D]espite the broad language contained in the complaint, the statements
> allegedly made by defendants in the privacy policy and online notices do
> not constitute an unlimited guaranty that patient information could not be
> stolen or that computerized data could not be hacked. Defendants' alleged
> failure to safeguard plaintiffs' protected health information and identifying
> information from theft did not mislead the plaintiffs in any material way and
> does not constitute a deceptive practice within the meaning of the statute."
> (Citations omitted).

19 N.Y.S.3d 850, 859-60 (N.Y. Sup. Ct. 2015).

Plaintiffs in the instant matter contend that the Met committed to manage Plaintiffs' and

putative class members' PII and promised to never share such PII except under certain limited

circumstances. The assertions in *Rider* were, if anything, much more specific than those here.

Unlike the Met, the defendant in *Rider* allegedly stated to consumers that it was PCI DSS

compliant and made general representations regarding the strength of its security protocols. Yet

the court dismissed the GBL § 349 cause of action in *Rider*, and the Court should do so in this case

as well. Broad conclusory allegations are insufficient to show that deceptive acts were directed at

consumers, or that the acts at issue were materially misleading. The Complaint therefore fails to

set forth a GBL § 349 claim upon which relief can be granted.

### 3. The Failure to Allege Exposure to Deceptive Statements is Fatal to Plaintiffs' GBL § 349 Claim

Dismissal of GBL § 349 claims is also warranted where plaintiffs fail to allege that they

were exposed to or relied upon the supposedly deceptive statements, and therefore could not have

been deceived. In *In re USAA Data Sec. Litig*., the court held that "[a]lthough justifiable reliance

on the alleged misrepresentation or omission is not a requisite element for a claim under Section

349, a plaintiff must plausibly allege he or she was exposed to the deceptive conduct in the first instance." 621 F. Supp. 3d 454, 472 (S.D.N.Y. 2022).   "Put another way, in order to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived." *Id*.   The *USAA Data Sec. Litig.* court found that the "plaintiffs [did] not plausibly allege they were ever exposed to any purportedly deceptive misrepresentation or omission by [the defendant]. … Plaintiffs thus fail[ed] plausibly to allege their injuries were 'caused' by any deceptive conduct on the part of [the defendant].").   *Id*. (internal citations omitted); *see also Rand v. Travelers Indem. Co.*, No. 21 CV 10744 (VB), 2022 WL 15523722, at *10 (S.D.N.Y., Oct. 27, 2022) (same).

In the instant litigation, Plaintiffs fail to allege that they read or relied on any statements by the Met or took any actions in response, thereby warranting dismissal of Plaintiffs' GBL § 349 claim.

### B.  Plaintiffs' Third Cause of Action for Breach of Contract Must Be Dismissed Because the Met Did Not Enter Into a Contract Regarding Data Security

To state a claim for breach of contract under New York law, a plaintiff must allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc*., 938 F.3d 8, 12 (2d Cir. 2019). "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *In re GE/CBPS Data Breach Litig*., 2021 WL 3406374, at *11 (S.D.N.Y. Aug. 4, 2021) (citations omitted). "Generally, a party alleging a breach of contract must demonstrate the existence of a contract reflecting the terms and conditions of their purported agreement." *Id*. As set forth in Defendant's Exhibit A, the Complaint fails to plausibly allege that the Met entered into a contract with Plaintiffs related to data security.

Plaintiffs' statement that they "entered into a valid and enforceable contract through which they paid money to Defendant in exchange for services, or, in the case of current and former employees of Defendant, they provided services to Defendant in exchange for certain compensation" is not supported within the pleadings.   Complaint ¶ 137.   Plaintiffs provided information to the Met related to purchasing goods or services from the Met or to employment or potential employment with the Met.   Plaintiffs further allege that the Privacy Policy "memorialized the rights and obligations of Defendant and its current and former employees and customers[,] … [and] was provided to Plaintiffs and Class members in a manner in which it became part of the parties' agreement.   *Id*. ¶ 138.   The Plaintiffs also note that the Privacy Policy states that the Met is responsible for the "management" of Plaintiffs' PII.   *Id*. ¶ 138.   However, Plaintiffs do not state what contractual data security promises the Met supposedly entered into regarding the management of such information, let alone what contractual obligations the Met supposedly breached.   In fact, as noted above, the Privacy Policy specifically states that "no data transmission or storage system can be guaranteed to be 100% secure."   https://www.metopera.org/user-information/privacy-policy.

It is incontrovertible that data privacy was not the primary focus of the relationship between the parties.   Plaintiffs fail to identify any contractual representations that the Met made or intended to enter into regarding data security.   It is a "well-settled principle of New York law that '[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract,' which principle ensures that 'courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement.'"   *Hudson & Broad, Inc. v. J.C. Penney Corp.*, 553 Fed.Appx. 37, 39 (2d Cir. 2014) (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989)).   Because Plaintiffs have not and cannot allege that the Met

intended to enter into a contract guaranteeing any specific security measures, the Third Cause of Action for breach of contract must be dismissed. *See Rider*, 2023 WL 2163208, at *5 ("[P]laintiffs have not identified any language in [the] contract representing that any security measure relevant to the claim here was in place, and thus have failed to sufficiently allege a breach.").

Additionally, the Complaint does not allege or suggest that Plaintiffs read or relied upon the Privacy Policy in any way. "It is a basic tenet of [New York] contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (citation omitted). Of course, there cannot be a meeting of minds where one party had not read the document which established the purported contract and was therefore not aware of the terms of the purported contract. To the extent that Plaintiffs are suggesting that they provided information to the Met in reliance on promises contained in the Privacy Policy, such an argument fails because Plaintiffs could not have relied upon promises that they did not know existed.

For each of these reasons, Plaintiffs' Third Cause of Action, for Breach of Contract, must be dismissed.

### C. Plaintiffs' Fifth Cause of Action for Unjust Enrichment Must Be Dismissed Because the Met Did Not Unjustly Retain Any Benefit and the Cause of Action is Duplicative

"To sustain a claim for unjust enrichment under New York law, a plaintiff must plausibly allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted). A typical unjust enrichment claim is one "in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012).

As set forth in Defendant's Exhibit A, the Complaint fails to plausible allege that Plaintiffs and the putative class members conferred a benefit upon the Met that would be unjust for the Met to retain.  In fact, the Complaint concedes that "Plaintiffs provided Defendant with their PII" in order to "either work[] as employees and/or purchase[]goods from Defendant."  Complaint at *Id.* at ¶ 159.  The Met's possession of such PII was merely incidental to Plaintiffs' employment or purchase of goods.  Plaintiffs do not allege that the Met further benefited from the Plaintiffs' provision of personal information.  *See In re Waste Mgmt. Data Breach Litig.*, No. 21CV6147 (DLC), 2022 WL 561734, at *6 (S.D.N.Y., Feb. 24, 2022) ("The third-party hackers benefitted at the expense of both the plaintiffs and Waste Management, and it is that person or persons which in equity and good conscience owes restitution to the plaintiffs.").  The Complaint's failure to address how the Met profited or benefited by possessing Plaintiffs' PII warrants dismissal of this cause of action.

In addition, as set forth in Defendant's Exhibit A, Plaintiffs' unjust enrichment action is duplicative of their contractual and/or tort claims.  Notably, "unjust enrichment is not a catchall cause of action to be used when others fail."  *Corsello*, 18 N.Y.3d at 790.  It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Id.*  (citation omitted).  In *In re Waste Mgmt. Data Breach Litig.*, this Court dismissed the plaintiffs' unjust enrichment claim as follows:

> "The plaintiffs do not explain how their unjust enrichment action is distinct from their other contract and tort claims.  The plaintiffs argue that Waste Management profited from the plaintiffs' labor, and that it would be inequitable to let them keep the profit they saved by maintaining allegedly inadequate data protection measures. . . .  Ultimately, the plaintiffs' unjust enrichment claim simply repackages the same theories of harm alleged in its contract and tort actions.  Accordingly, the unjust enrichment claim must be dismissed as duplicative."

2022 WL 561734, at *6.  Plaintiffs' unjust enrichment claim is duplicative of its contract claim, and therefore this cause of action must be dismissed.

### D.  Plaintiffs' Sixth Cause of Action for Declaratory Judgment Must Be Dismissed Because Plaintiffs Do Not Have Standing and the Cause of Action is Duplicative

Plaintiffs' Sixth Cause of Action, for declaratory judgment, is premised on the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, *et seq.*  *See* Complaint, ¶¶ 171, 175.  The DJA "does not create an independent cause of action."  *Rand v. Travelers Indem. Co.*, No. 21 CV 10744 (VB), 2022 WL 15523722, at *10 (citing *In re Joint E. & S. Dit. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)).  Rather, "[i]ts operation is procedural only – to provide a form of relief previously unavailable.  Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."  *Id.*  In other words, a plaintiff properly obtains declaratory relief only "based on other laws" – i.e., a law other than the DJA – "that the defendant allegedly violated."  *Id.* (citation omitted).

Plaintiffs in this case seek declarations related to the Met's duty of care as to customer information in the context of an alleged data breach.  *See* Complaint, ¶ 175.  Plaintiffs also seek injunctive relief requiring the Met to employ "adequate security protocols" as a means to prevent "subsequent security breaches."  *Id.* at ¶¶ 176-179.

As set forth in Defendant's Exhibit A, Plaintiffs do not have standing to seek the requested injunctive relief that the Met must enhance its data security practices because they have failed to plausibly allege an imminent risk of injury.  More specifically, the Complaint fails to indicate how any such measures would address the Met's alleged culpable conduct in or before December 2022. "[A]n injunction requiring [a defendant] to improve its cybersecurity systems cannot protect the plaintiffs from future misuse of their PII by the individuals they allege now possess it.  Any such

relief would safeguard only against a future breach." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023). "Standing for injunctive relief depends on whether [the plaintiffs are] likely to suffer future injury." *Id.* (citation omitted).

Plaintiffs have done nothing more than make conclusory allegations that the Met's data security measures are inadequate. *See* Complaint, ¶ 174. Plaintiffs have not alleged that the Met is more likely than any other entity to suffer a future data breach. In *Webb*, the Circuit Court determined that the plaintiff lacked standing to seek injunctive relief, holding that the defendant faced "much the same risk of future cyberhacking as virtually every holder of private data." *Webb*, 72 F.4th at 378. "If that risk were deemed sufficiently imminent to justify injunctive relief, virtually every company and government agency might be exposed to requests for injunctive relief like the one the plaintiffs seek here." *Id.* Similarly, the Complaint does not indicate in any manner how future modifications to the Met's data security measures would relate to the December 2022 theft of Plaintiffs' PII. As a result, Plaintiffs' Declaratory Judgment cause of action is subject to dismissal.

In addition, as set forth in Defendant's Exhibit A, Plaintiffs' declaratory judgment action is duplicative of their contractual claims. Where a plaintiff seeks various declarations related to defendants' contractual obligations and their duty of care as to customer information in the context of a data breach and "the relief sought is duplicative of [the plaintiff's] claims for negligence and breach of contract, her claim under the Declaratory Judgment Act is dismissed." *Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472 (PKC), 2019 WL 2023713, at *15 (S.D.N.Y. May 7, 2019) (citations omitted). Plaintiffs' Sixth Cause of Action for declaratory judgment must also therefore be dismissed to the extent any requested declaratory relief is duplicative of Plaintiffs' negligence or breach of contract claims.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant Metropolitan Opera Association, Inc. respectfully request that the Court grant its Motion to Dismiss the First (Violation of GBL § 349), Third (Breach of Express Contract) and Fifth (Unjust Enrichment) Causes of Action contained within Plaintiffs' Amended Consolidated Class Action Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and Plaintiffs' Sixth (Declaratory Judgment) Cause of Action contained within the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.


Dated:  October 5, 2023

                                                    Respectfully submitted,

                                                    MULLEN COUGHLIN LLC

                                                    */s/ Daniel M. Braude*
                                                    Daniel M. Braude
                                                    411 Theodore Fremd Avenue
                                                    Suite 206 South
                                                    Rye, New York 10580
                                                    (267) 930-1316
                                                    dbraude@mullen.law

                                                    *Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

REBECCA TUTEUR, ANTHONY VITI, and
MATTHEW NAPOLI, on behalf of themselves and all
others similarly situated,

                Plaintiffs,                    Case No: 1:23-cv-03997-KPF

           - vs -

METROPOLITAN OPERA ASSOCIATION, INC.,

                Defendant.

<u>**CERTIFICATE OF SERVICE**</u>

      I HEREBY CERTIFY that on October 5, 2023, a copy of the foregoing Memorandum of

Law in Support of Motion to Dismiss Plaintiff's Amended Consolidated Class Action Complaint

filed by Defendant Metropolitan Opera Association, Inc. was served electronically by the CM/ECF

system on all counsel of record.

                                      */s/ Daniel M. Braude*
                                      Daniel M. Braude