**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **REBECCA TUTEUR, ANTHONY VITI,** and **MATTHEW NAPOLI,** on behalf of themselves and all others similarly situated, | Case No. 1:23-cv-03997-GS |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| **METROPOLITAN OPERA ASSOCIATION, INC.,** | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION………………………………………………………………1

II.    SUMMARY OF THE ACTION AND SETTLEMENT…..…………………………2

    A.  Background………………………….…..…………………………………...2

    B.  Terms of the Settlement……………………………………………………..3

    C.  Preliminary Approval and Notice…………………………………………...3

III.   THE SETTLEMENT MERITS FINAL APPROVAL BY THE COURT……………4

    A.  The Settlement Meets the Standards for Final Approval under Rule 23(e)..……4

        1.  Plaintiffs and Settlement Class Counsel have Adequately Represented
           The Settlement Class in this Action …………………………………..6

        2.  The Settlement Was Negotiated at Arm's Length and Aided by a Respected
           And Experienced Mediator……..…………………………………..8

        3.  The Relief Provided for the Class is Adequate…..…………………..9

        4.  The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor of Final
           Approval…………………………..……………………………………10

        5.  The Terms of the Proposed Award of Attorneys' Fees Weigh in Favor of
           Final Approval………………………………………………………12

        6.  The Settlement Treats Class Members Equitably Relative to Each Other…..12

    B.  The Settlement Also Warrants Approval Under the *Grinnell* Factors………….13

        1.  The Complexity, Expense, and Likely Duration of Litigation Weighs in
           Favor of Final Approval……………………………………………13

        2.  Reaction of the Settlement Class……………………………………13

         3.  Stage of the Proceedings and Amount of Discovery Completed…………..17

        4.  The Risks of Continued Litigation……………………………………18

        5.  The Ability of Defendant to Withstand Greater Judgment…………………18

6.  The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation…………………………………………19

IV.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS………………...19

V.  NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS………………………………………………………………………...20

VI.  CONCLUSION…………………………………………………………………………22

## TABLE OF AUTHORITIES

**CASES**                                                                           **PAGES(S)**

*Babcock v. C. Tech Collections, Inc.*,
    2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017)…………………………………………..11

*Baksha et al. v. Ivy Rehab Network, Inc.*,
    No. 7-20-cv-01845-CS (S.D.N.Y. Jan. 27, 2021)…………………………………..9, 19

*Banyai v. Mazur*,
    2007 WL 927583 (S.D.N.Y. Mar. 27, 2007)……………………………………………10

*Belton v. GE Capital Consumer Lending, Inc.*,
    2022 WL 407404 (S.D.N.Y. Feb. 10, 2022)……………………………………………..9

*Castagna v. Madison Square Garden, L.P.*,
    2011 WL 2208614 (S.D.N.Y. June 7, 2011)……………………………………………17

*Charron v. Pinnacle Group NY LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)………………………………………………...14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448, 463 (2d Cir. 1974)………………………………………………………..5

*City of Providence v. Aéropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014)…………………………………………...5

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)……………………………………………………………14

*Fleisher v. Phx. Life Ins. Co.*,
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)………………………………………...17

*Hall v. ProSource Techs.*, LLC,
    2016 WL 1555128, (E.D.N.Y. Apr. 11, 2016)…………………………………………22

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010)………………………………………...11

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)…………………………………………………18

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)…………………………………………….11

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)……………………………………………...20

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009)……………………………………………………….7

*In re Facebook Inc., IPO Secs. & Deriv. Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)…………………………………………………8

*In re: GE/CBPS Data Breach Litigation*,
   No. 1:20-cv-02903-KPF (S.D.N.Y. Mar. 28, 2023)…………………………………..9, 19

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)……………………………………...6, 8, 11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013)……………………………………………………11

*In re Hudson's Bay Company*,
   2022 WL 2063864 (S.D.N.Y. June 8, 2022)…………………………………………16

*In re Interpublic Sec. Litig.*,
   2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)………………………………………17

*In re JPMorgan Treasury Spoofing Litig.*,
   No. 1:20-cv-03515-PAE (S.D.N.Y. May 31, 2022)……………………………4, 9, 13, 20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2020 WL 6290596 (S.D.N.Y. Oct. 27, 2020)……………………………………...22

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)………………………………………………...13

*In re Luxottica Grp. S.p.A. Secs. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006)………………………………………………...13

*In re Mexican Gov't Bonds Antitrust Litig.*,
   2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021)………………………………………21

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)………………………………………………5

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997)………………………………………………...18

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006)……………………………………………………...7

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003)……………………………………………...14

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)……………………………………………...13

*Medina v. NYC Harlem Foods Inc.*,
    2024 WL 230745 (S.D.N.Y. Jan. 22, 2024)…………………………………………18

*McGlenn v. Driveline Retail Merch., Inc.*,
    2021 WL 165121 (C.D. Ill. Jan. 19, 2021)…………………………………………11

*McHenry, et al. v. Advent Health Partners Inc.*,
    3:22-cv-00287 (M.D. Tenn. Apr. 24, 2023)…………………………………………9

*McWhorter v. Ocwen Loan Servicing, LLC*,
    2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019)………………………………12

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)………………………………………………..4

*Messiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)……………………………………..10

*Monegato, et al. v. Fertility Centers of Illinois PLLC*,
    2022-CH-00810 (Ill. Ct. Cook Cty. Feb. 27, 2023)………………………………..10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)………………………………………………………………..21

*Rossi, et al. v. Claire's Stores, Inc., et al.*,
    1:20-cv-05090 (N.D. Ill. Sept. 27, 2022)…………………………………………...10

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)………………………………………7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)………………………………………………..4, 5, 21, 22

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)………………………………………10

## **RULES**

Fed. R. Civ. P. 23(c)…………………………………………………………………………20, 21

Fed. R. Civ. P. 23(e)………………………………………………………………………...5-8, 20

Plaintiffs Rebecca Tuteur, Anthony Viti, and Matthew Napoli (collectively, "Plaintiffs" or "Settlement Class Representatives") respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement on the terms set forth in the Settlement Agreement dated September 30, 2024 (Dkt No. 60-3) and for certification of the Settlement Class.[1]

## I.    INTRODUCTION

If approved, the Settlement will successfully resolve the claims of 46,333 individuals nationwide who were notified on November 6, 2024 of the Met Opera Data Security Incident.  The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense.  As discussed below, the Settlement calls for Defendant to establish a Settlement Fund of $450,000 for the benefit of eligible Class Members.  Further, all costs of notice and administration, presently estimated to be at least $79,450.50, will be paid by Defendant separately from (and not out of) the Settlement Fund.  *See Declaration of Jenny Shawver Re: Notice and Administration* ("Admin. Decl.") ¶ 19.

On October 7, 2024, this Court preliminarily approved the Class Action Settlement Agreement reached by Settlement Class Representatives and Defendant Metropolitan Opera Association, Inc., (the "Met Opera" or "Defendant").  Dkt. No. 61.  The Court-ordered Notice Plan has since been executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate.  Individual Notice was provided directly to Settlement Class Members via first-class mail, successfully reaching 96.86% of the Settlement Class and easily meeting the due process standard. Admin. Decl. ¶ 12. The Settlement Class's reaction to the

---

[1] Unless otherwise defined, all capitalized terms have the meanings set forth in the Settlement Agreement.

Settlement has been positive. Of the 46,333 U.S. based potential Class Members who were sent Notice, only two Class Members have submitted timely objections and only two Class Members have submitted timely exclusions have been received.  This response weighs in favor of final approval.

For the reasons detailed below, Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class.  Plaintiffs respectfully request that the Court finally approve the Settlement, grant Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards, and enter a final judgment dismissing this case.

## II.      SUMMARY OF THE ACTION AND SETTLEMENT

Plaintiffs respectfully refer the Court to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards (Dkt. No. 62-1) for a detailed recitation of the substantive and procedural background of this litigation.  For the purposes of final approval, Plaintiffs highlight the following:

### A. Background

Plaintiffs allege that from September 30, 2022, through December 6, 2022, Defendant experienced a data security incident in which unauthorized parties gained access to and obtained data from Defendant's network, potentially compromising the PII of up to 47,314 individuals.  Dkt. No. 60-1.  Soon after Plaintiffs filed their Consolidated Amended Class Action Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution.  *See Declaration of Mason A. Barney in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement* (Barney Decl.) ¶ 3.  Over the next few months, the Parties engaged in extensive arm's length settlement negotiations.  *Id.* at ¶ 5.  Settlement Class Counsel

were in a well-informed position to mediate before Hon. Wayne Andersen (Ret.) and reach the favorable Settlement currently before the Court. *Id.* at ¶ 4. In advance of the mediation, and in addition to the extensive factual and legal research and briefing on Defendant's motion to dismiss, Settlement Class Counsel researched publicly available information related to the Met Opera Data Security Incident, the merits of Plaintiffs' claims, and issues relating to class certification, and the Parties discussed and disputed their respective positions regarding the same. *Id.* at ¶ 3.

## B.  Terms of the Settlement

If the Settlement receives final approval, the $450,000 Settlement Fund established by Defendant will be used to provide: (1) up to $750 in ordinary loss reimbursements; (2) up to $7,500 in extraordinary loss reimbursements; and (3) between one (1) and four (4) hours of lost time at $25 per hour. SA. ¶ 42.

Defendant further agrees to provide to Participating Class Members who submit a Claim Form two years of free credit monitoring services. *Id.* ¶ 46.

Based upon their extensive experience in complex litigation and data privacy, Settlement Class Counsel believe that the $450,000 Settlement will be ample to pay the claims of Participating Settlement Class Members. However, if there are insufficient monies to pay all claims, claims will be reduced on a pro rata basis. If monies remain in the Settlement Fund after payment of all claims, the remaining funds will revert to Defendant.

## C.  Preliminary Approval and Notice

On October 2, 2024, Plaintiffs moved the Court for preliminary approval of the Settlement, approval of the proposed Notice Plan, and to direct that notice be given to the Settlement Class, and Schedule a Final Approval Hearing. Dkt. No. 60. On October 4, 2024, the Court preliminarily approved the Settlement. Dkt. No. 61. Consistent with the Preliminary Approval Order, the

Settlement Administrator implemented the Notice Plan, disseminating notices to 46,333 potential members of the Settlement Class via U.S. Mail.  Admin. Decl. ¶ 10.   Notice was also provided via an internet website exclusively dedicated to the Settlement.  *Id.*

Notice instructed Settlement Class Members of their legal rights and options in this Settlement including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement.  Dkt. No. 60-1 (Ex. B).  The deadline for Settlement Class Members to exclude themselves or object to the proposed Settlement passed on December 23, 2024, and only two objections and two exclusions requests have been received to date.  Admin. Decl. ¶ 17.

## III.    THE SETTLEMENT MERITS FINAL APPROVAL BY THE COURT

### A. The Settlement Meets the Standards for Final Approval under Rule 23(e)

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims.   "A court may approve a proposed class action settlement, provided it determines that the settlement is 'fair, adequate, and reasonable, and not a product of collusion."  *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quotations omitted).  As this Court stated in *JPMorgan Treasury Spoofing*, in exercising its discretion over a proposed settlement, a court should review the settlement in light of "the general judicial policy favoring settlement."  *In re JPMorgan Treasury Spoofing Litig.*, No. 1:20-cv-03515-PAE, Fairness Hearing Transcript (S.D.N.Y. May 31, 2022) (hereafter "*Treasury Spoofing*") at 16 (citations omitted).  The Second Circuit has noted that the policy favoring settlement is strong, "particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.

2005).  Moreover, absent fraud or collusion, the Court "should be hesitant to substitute its judgment for that of the parties who negotiated the settlement."  *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132-CM-GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

In undertaking the Rule 23(e) evaluation, a court must consider "both the settlement's terms, and the negotiating process leading to the settlement" and review the settlement for both procedural and substantive fairness.  *Meredith*, 87 F. Supp. 3d at 662 (quoting *Wal-Mart Stores*, 396 F.3d at 115).  In making the determination of whether the settlement is "fair, reasonable, and adequate," amended Rule 23(e)(2) provides that a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2).

Consistent with this guidance, courts in the Second Circuit have long considered the factors set forth in *City of Detroit v. Grinnell Corp.* in evaluating the adequacy of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F. 3d 43 (2d Cir. 200); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F.

Supp. 3d 307, 311 (S.D.N.Y. 2020) (noting "factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors").

After considering the Rule 23(e)(2) factors at the preliminary approval stage, the Court preliminarily determined that the Settlement is fair, reasonable, and adequate, subject to further consideration at the Final Fairness Hearing.  Dkt. No. 61, at 4.  The Cout's conclusion applies equally now.

### 1.   Plaintiffs and Settlement Class Counsel Have Adequately Represented the Settlement Class in this Action

In determining whether to approve a class action settlement, the court should first consider whether class representatives and class counsel "have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A); *see generally In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) ("Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interest are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").  As this Court has held, "[a] presumption of fairness may attach to a proposed settlement when the terms of that settlement were reached by experienced counsel during arm's-length negotiations undertaken after meaningful discovery."  *Meredith*, 87 F. Supp. 3d at 662.  Settlement Class Counsel have significant combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class.  Barney Decl. ¶¶ 2, 9; *see also* ECF 60-4, 60-5.  Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members.

Settlement Class Representatives' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the Met Opera Data Security Incident.  Settlement Class Representatives' and Settlement Class Members' data was allegedly compromised by

Defendant in the same manner. Under the terms of the Settlement Agreement, Settlement Class Representatives and Settlement Class Members will all be eligible for credit monitoring services and monetary relief from the Settlement Fund. Settlement Class Representatives have an interest in obtaining the largest possible recovery from Defendant. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Plaintiffs have maintained contact with proposed Class Counsel, reviewed filings in the Action, and have no conflicts with the proposed Settlement Class. Barney Decl. ¶ 8. Plaintiffs do not have any conflicts with the proposed class and have adequately represented Settlement Class Members in the litigation.

Likewise, Settlement Class Counsel have also "adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Settlement Class Counsel have extensive class action and complex litigation experience and used this expertise to pursue Plaintiffs' claims and ultimately negotiate a favorable recovery for the Settlement Class. Barney Decl. ¶¶ 2, 9; *see also* ECF 60-4, 60-5; s*ee In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009); a*ff'd Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting "extensive" experience of counsel in granting final approval): *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Settlement Class Counsel was fully informed about the facts, risks, and challenges of this action and had sufficient basis on which to negotiate a very significant settlement.

**2. The Settlement Was Negotiated at Arm's Length and Aided by a Respected and Experienced Mediator**

The Court should next consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This includes consideration of other related circumstances to ensure the procedural fairness of a settlement, including whether there was sufficient discovery prior to settlement. *See In re Facebook Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("When a settlement is the product of arms-length negotiations between experienced, capable counsel after meaningful discovery, it is afforded a presumption of fairness, adequacy, and reasonableness.") (cleaned up). To assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *See In re GSE Bonds*, 414 F. Supp. 3d at 699.

Soon after Plaintiffs filed their Consolidated Amended Class Action Complaint, the parties by and through their respective counsel, began discussing the possibility for resolution, all while briefing Defendant's motion to dismiss. Barney Decl. ¶ 3. The Parties agreed that a relatively early resolution was warranted. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations. *Id.* at 5. In addition to and in preparation for negotiations, in order for the Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, Settlement Class Counsel researched publicly available information related to the Met Opera Data Security Incident, the merits of Plaintiffs' claims, and issues relating to class certification, and the Parties discussed and disputed their respective positions regarding the same. The Parties also engaged in extensive factual and legal research and briefing on Defendant's motion to dismiss. *Id.* at 3. The parties attended a full-day mediation session with Hon. Wayne Andersen (Ret.) of JAMS on November 20, 2023. *Id.* at 4. Following mediation and months of

continued adversarial and extensive arms-length negotiations, the Parties agreed upon a term sheet setting forth the essential terms of the Settlement. *Id*. at 5. The formalized Settlement Agreement was finalized and executed on September 30, 2024. *Id*. at 6.

It is the opinion of Settlement Class Counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Class. Barney Decl. ¶ 9. As this Court has held, involvement of a mediator in settlement negotiations supports the court's finding of fairness. S*ee Belton v. GE Capital Consumer Lending, Inc.*, No. 21-cv-9493-CM, 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (mediation session with a "highly regarded mediator" satisfied the court's inquiry into the thoroughness of the negotiations); *see also Treasury Spoofing* at 18 ("[t]he fact that the proposed settlement reflects a successful mediation further supports the court's finding of procedural fairness.").

### 3.  The Relief Provided for the Class is Adequate

Federal Rule of Civil Procedure 23(e)(2)(c) requires examination of the relief provided by the Settlement. This relief is consistent with relief provided in other similar data breach cases approved by this court and Courts across the United States. *In re: GE/CBPS Data Breach Litigation*, No. 1:20-cv-02903-KPF, Dkt. No. 123 (S.D.N.Y. Mar. 28, 2023) (approving claims-made data breach settlement providing for reimbursement of out-of-pocket costs or expenditures of up to $3,500 per class member plus up to four hours of lost time at $18 per hour, subject to an aggregate cap of $350,000 for a class of 10,392 members); *Bakshi et al. v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS, Dkt. No. 49 (S.D.N.Y. Jan. 27, 2021) (approving claims-made data breach settlement providing for reimbursement for ordinary documented losses – including up to one hour of lost time at $20 – of up to $75 per class member, subject to $150,000 aggregate cap for class of 121,160); *McHenry, et al. v. Advent Health Partners Inc*., 3:22-cv-00287, Dkt. 36

(M.D. Tenn. Apr. 24, 2023) (approving claims-made data breach settlement providing $750 for ordinary losses and $5,000 for extraordinary losses per person); *Rossi, et al. v. Claire's Stores, Inc., et al.*, 1:20-cv-05090, Dkt. 52 (N.D. Ill. Sept. 27, 2022) (approving claims-made data breach settlement subject to $350,000 aggregate cap); *Monegato, et al. v. Fertility Centers of Illinois PLLC*, 2022-CH-00810 (Ill. Ct. Cook Cty. Feb. 27, 2023) (approving claims-made data breach settlement subject to $450,000 aggregate cap).

When, as here, a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, a settlement is reasonable under this factor." *Messiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669-BMC, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (citations omitted).

### 4. The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor of Final Approval

In this case, the relief to the Settlement Class is more than adequate in light of the costs, risks, and time required to litigate this action through trial and appeal. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *11 (E.D.N.Y. Feb. 18, 2011). "[I]f settlement has any purpose at all, it is to avoid trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00-Civ-9806-SHS, 2007 WL 927583, at *30 (S.D.N.Y. Mar. 27, 2007). "The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith*, 87 F. Supp. 3d at 663.

While Plaintiffs are confident in the merits of the claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—

even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08-cv-6060-RMB-RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097-SEM, 2021 WL 165121, at *11 (C.D. Ill. Jan. 19, 2021); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). This District has recognized that the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the class were to be litigated." *In re GSE Bonds*, 414 F. Supp. 3d at 694; *see also In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02-cv-5575-SWK, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("[T]he process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement.").

To the extent the law is adapting to this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, cybersecurity cases are among the riskiest and uncertain of all class action litigation, making settlement the prudent course if possible. Considering the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 WL 1155767, at *7 (E.D.N.Y. Mar. 27, 2017) (class settlement "eliminates the risk, expense, and delay inherent in the litigation process.").

While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued Litigation. Through the Settlement, Settlement Class Members gain significant benefits

11

without having to face further risk of not receiving any relief at all.  This weighs strongly in favor of final approval.

### 5.  The Terms of the Proposed Award of Attorneys' Fees Weighs in Favor of Final Approval

The Settlement Agreement provides that Defendant will pay Settlement Class Counsel's attorneys' fees and reimbursement of expenses as approved by the Court.  Plaintiffs have moved for an award of attorneys' fees, reimbursement of expenses, and for Service Awards.  Dkt. No. 62. As explained in the moving papers for that motion, the requested fees and reimbursement of expenses are fair and reasonable.  Likewise, the Service Award Payments sought for the Settlement Class Representatives are modest at best and are another factor that weighs in favor of final approval.  Significantly, any award of attorneys' fees, reimbursement of expenses, and for Service Awards will be paid separately and apart from the $450,000 Settlement Fund.

### 6.  The Settlement Treats Class Members Equitably Relative to Each Other

As described above, each Settlement Class Member may make a Claim for the same cash reimbursements and credit monitoring services.  Additionally, any Settlement Class Member, even if they do not submit a claim for the cash reimbursements or credit monitoring services who believe they have a more valuable claim had the opportunity to opt-out of the Settlement and pursue it. *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (finding settlement class members' ability to exclude themselves from a settlement shows equitable treatment and weighing it in favor of final approval).

**B.  The Settlement Also Warrants Approval Under the *Grinnell* Factors**

**1.  The Complexity, Expense, and Likely Duration of Litigation Weighs in Favor of Final Approval**

Federal Rule of Civil Procedure 23(e)(2)(C)(i) and the first *Grinnell* factor support final approval, as courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement.  *See In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.").  As explained above, the risks Plaintiffs faced in this litigation are substantial and cannot be disregarded.  Even after incurring any additional litigation costs, including those related to any potential experts, Plaintiffs and the Settlement Class Members still might not achieve a result that provides comparable benefits to the instant settlement.  Protracted and ongoing litigation would only serve to increase costs and have a potentially negative affect on Class recovery, which is itself far from certain.  As this Court has found, the greater the "complexity, expense and likely duration of the litigation," the stronger the basis for approving a settlement.  *Meredith*, 87 F. Supp. 3d at 663; *Treasury Spoofing* at 19.  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to length and expensive litigation with uncertain results." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).

Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risks.

**2.  Reaction of the Settlement Class**

Courts consistently determine that the reaction of a class to settlement is "perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*,

186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted).  That being said, "[a] certain number of objections are to be expected in a class action like this one with an extensive notice campaign and a potentially large number of class members.  If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."  *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (quotation omitted); *see also, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (holding that "[t]he District Court properly concluded that this small number of objections [18 where 27,833 notices were sent] weighed in favor of the settlement"); *Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 190 (S.D.N.Y. 2012) (approving settlement in a RICO action as "fair, reasonable, and adequate to the class as a whole" where 26,000 tenants received the notice and 118 written objections were received, 141 elected to opt out, there was strident opposition from those who did object and the six named plaintiffs and class representatives did not support the settlement), *aff'd sub nom, Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).  Here, the notice campaign resulted in 46,333 notices mailed directly to potential Settlement Class Members and notice via an internet website. Admin Decl. ¶ 10.

The reaction of Settlement Class Members to the Settlement has been overwhelmingly positive and weighs in favor of approval. The Claims Deadline was February 4, 2025, and approximately 555 Claims have been received to date.  *Id.* ¶ 15.  The Claim Forms submitted by Settlement Class Members represents a 1.19% claims rate. *Id.* This surpasses the claims rates frequently seen in other data breach class action settlements that have been approved. *See, e.g., In re Wawa, Inc. Data Sec. Litig*., No. 19-6019, 2024 U.S. Dist. LEXIS 65200 (E.D. Pa. Apr. 9, 2024) (2.56% claims rate "actually compares favorably to the claims rates in other data breach class actions"); *Carter v. Vivendi Ticketing United States LLC*, No. 22-01981, 2023 U.S. Dist. LEXIS

210744, at *15 (C.D. Cal. Oct. 30, 2023) (1.6% claims rate "is in line with claims rates in other data breach class action settlements" and collecting cases with claims rates between 0.83% and "about two percent"); *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate reflects a positive reaction by the class). Moreover, of the 555 timely submitted Claims, Angeion has received 412 Class Members opted-in for Credit Monitoring Services, 42 claimed Ordinary Losses, 176 claimed between one and four hours of documented time spent, and 13 claimed Extraordinary Losses. *Id.* ¶ 16.

The deadline to opt out of or object to the settlement was December 23, 2024. Of the 46,333 potential Settlement Class Members who received Notice, only two have timely excluded themselves and only two have timely objected. Admin Decl. ¶¶ 17-18. These numbers suggest that the overwhelming majority of Settlement Class Members are satisfied with the Settlement, weighing strongly in favor of approval of the Settlement. *See Charron*, 874 F. Supp. 2d at 198 ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it.").

Both objections are baseless. The first objection was asserted by Frank Goldsmith on November 11, 2024. *See* Barney Decl., Ex. 1. Goldsmith principally objects to the amount to be awarded to Settlement Class Counsel in the fee award proposed in the Settlement Agreement without disclosure of a reasonable hourly rate. However, on December 9, 2024, Settlement Class Counsel timely filed Plaintiffs' Memorandum of Law in Support of Plaintiff' Motion for Approval of Attorneys' Fees, Costs, and Service Awards (Dkt. No. 62-1) and Declaration of Israel David in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Service Awards (Dkt. No. 62-2) which outlines Settlement Class Counsel's reasonable hourly rates. As such, Goldsmith's

premature objection is adequately addressed by the timely filing of Plaintiffs' Memorandum of Law in Support of Plaintiff' Motion for Approval of Attorneys' Fees, Costs, and Declaration of Israel David in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Service Awards.

The second objection was asserted by Phillip L. Radoff on November 15, 2024. *See* Barney Decl., Ex. 2. Radoff principally objects to the Settlement because "the amount of the proposed legal fees ($250,000) is" in Radoff's view, "grossly disproportionate to the maximum liability envisioned in Paragraph 52 of the Proposed Settlement and Release ($450,000) and should be reduced to not more than 10% of the actual liability" and because the action is purportedly "contrary to the public interest in that it further weakens the financial viability of a great institution."

First, as discussed in detail in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards (Dkt. No. 62-1) and Declaration of Israel David in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Service Awards (Dkt. No. 62-2), the proposed legal fees equate to less than 10% of the value of the Settlement when considering all settlement benefits (cash payments for reimbursement of out-of-pocket expenses and time spent and two years of credit monitoring). As such, Radoff's objection that the proposed legal fees not equal more than 10% of the actual liability is without merit as the objection does not take into consideration Defendant's obligation to pay for Credit Monitoring Services. Second, public interest is served by Settlements that hold entities accountable for data breaches and provide relief through monetary reimbursements and credit monitoring; without such Settlements entities would have far less of an incentive to maintain adequate cyber security. *See In re Hudson's Bay Company*, No. 18-cv-8472-PKC,2022 WL 2063864, at *21 (S.D.N.Y. June 8, 2022) ("The public benefits when attorneys undertake a

16

complex commercial case that implicates consumer protections and data privacy. In addition to providing compensation to injured class members, the litigation and settlement of plaintiffs' claims incentivizes retailers to take stronger data-protection measures.").

Thus, given the presence of only two requests for exclusion and only two objections, the reaction of the Settlement Class warrants approval of the Settlement, and the two objections should be overruled and/or disregarded.

### 3. Stage of the Proceedings and Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and assess the adequacy of any settlement proposal." *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405-CM, 2015 WL 10847814, at *17 (S.D.N.Y. Sept. 9, 2015). While the case is relatively early in litigation, the Parties' negotiations included extensive research into publicly available information related to the Met Opera Data Security Incident, the merits of Plaintiffs' claims, and issues relating to class certification, and the Parties discussed and disputed their respective positions regarding the same, and the Parties further engaged in extensive factual and legal research and briefing on Defendant's motion to dismiss sufficient to allow both Parties to assess the claims and defenses at issue. Early settlement where, as here, the Parties are adequately informed to negotiate is to be commended. *Castagna v. Madison Square Garden, L.P.*, No. No. 09–cv–10211-LTS-HP, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. No. 02-Civ-6527-DLC, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

#### 4.    The Risks of Continued Litigation

*Grinnell* factors 4, 5, 6, address the risks of establishing liability, damages, and maintaining a class action through trial.  Although Plaintiffs believe in the merits of the case at the outset, continued litigation involves significant risk.  *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotation marks omitted).

As discussed above, the risk of establishing liability and damages in this matter is substantial.  Prior to the settlement, Defendant moved for the dismissal of this case.  Dkt. No. 28. If the action had continued past a motion to dismiss, Plaintiffs would have moved for certification of the Settlement Class.  While Plaintiffs and Settlement Class Counsel believe that the Action is appropriate for class treatment, the outcome of a contested certification motion and future appeals of a certification order via Fed. R. Civ. P. 23(f) are far from certain.  Moreover, even if the Settlement Class was certified, there is always the risk or possibility of decertification.  The Settlement avoids any uncertainty with respect to this issue.

#### 5.    The Ability of Defendant to Withstand Greater Judgment

Settlement Class Counsel has been apprised that the Met Opera (which has minimal to no available insurance coverage for any settlement of this matter) has had to tap into its endowment to meet its operating budget recently.  And even if Defendant *could* potentially withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Medina v. NYC Harlem Foods Inc*., No. 21-CV-1321-VSB, 2024

WL 230745, at *5 (S.D.N.Y. Jan. 22, 2024). Thus, this factor weighs, if at all, in favor of preliminary approval of the settlement.

### 6. The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

The eight and ninth *Grinnell* factors—the reasonableness of the settlement in light of the best possible recovery and the risks of litigation—also weigh in favor of approving the Settlement. As discussed above, the Settlement guarantees Settlement Class Members real relief for their injuries. The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain.

As described herein, the Settlement compares favorably with many other similar settlements. *In re: GE/CBPS Data Breach Litigation*, No. 1:20-cv-02903-KPF, Dkt. No. 123 (S.D.N.Y. March 28, 2023) (approving claims-made data breach settlement subject to $350,000 aggregate cap for class of 10,392); *Baksha et al. v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS, Dkt. No. 49 (S.D.N.Y. January 27, 2021) (approving claims-made data breach settlement subject to $150,000 aggregate cap for class of 121,160).

Here, the cash compensation to which eligible Settlement Class Members will be entitled—reimbursement of the Settlement Class Members' out of pocket losses and losses of time and money—is significant relative to economic damages incurred. In short, further litigation against Defendant would be time-consuming, expensive, and given the risks associated with data privacy cases in general and this case specifically, might not result in a greater benefit to the Settlement Class than that provided by the Settlement.

### IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small

claimants." *Meredith*, 87 F. Supp. 3d at 658 (quotations omitted). When the Court preliminarily approved the Settlement, it found that the Settlement Class preliminarily satisfied the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3). Dkt No. 61, at 2-3. There have been no changes that would undermine the Court's initial determination. *See Treasury Spoofing* at 26 (adopting the arguments made in support of Settlement "best outlined in plaintiffs' memorandum in support of preliminary approval" and where "no changes in that case that would warrant deviating from [the courts] initial view"); *see also In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage.).

As Plaintiffs set forth at length in Plaintiffs' Memorandum of Law in Support of Their Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt No. 60-1, pages 16-24), the proposed Settlement Class satisfied all of the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Settlement Class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes.

## V.    NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." Fed. R. Civ. P. 23(e)(1)(B). The standard for the adequacy of notice to the class is reasonableness. Fed. R. Civ. P. 23(c)(2)(B) (for actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to

20

all members who can be identified through reasonable effort."). "There are no rigid rules to determine whether a settlement notice to a class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114. The Settlement Class Members have received adequate notice and have been given sufficient opportunity to weigh in on or exclude themselves from the Settlement.

Plaintiffs have provided the Settlement Class with adequate notice of the Settlement. On November 6, 2024, Angeion established a website, www.metoperasettlement.com, containing essential information regarding the Settlement. *Id.* ¶ 13. As of the date of this declaration, the Settlement Website has received 3,157 website visits by 2,259 unique users totaling 6,476 pageviews. *Id*. Angeion also established a toll-free hotline, 1-(888) 898-4043, for Settlement Class Members to call and obtain additional information regarding the Settlement. *Id.* ¶ 14. This hotline is accessible 24 hours a day, 7 days a week. As of the date of this declaration, Angeion has received 649 calls totaling 2,929 minutes. *Id.* The Notice adequately set out the Settlement's essential terms and informed the potential Settlement Class Members of, among other things, their right to request exclusion from the Settlement Class or object to the Settlement, as well as the procedure for submitting a Claim Form. Dkt. No 60-1, Ex. B.

The Notice plan, as well as the mailed notice and website notice, satisfy due process. *See, e.g., In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-cv-02830, 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process"). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 219 (1950). The mailed notice and website notice are written in clear and concise language, and reasonably conveyed the necessary

information to the average class member.  *See Wal-Mart*, 396 F.3d at 114.  Settlement Class

Members have been afforded a full and fair opportunity to consider the proposed Settlement,

exclude themselves from the Settlement, and respond and/or appear in Court.  Further, the Notice

fully advised Class Members of the binding effect of the judgment on them.  Dkt No 60-1, Ex. B.

The content disseminated through the Notice campaign was more than adequate.  *See Hall

v. ProSource Techs.*, LLC, No. No. 14-CV-2502-SIL, 2016 WL 1555128, at *5 (E.D.N.Y. Apr.

11, 2016) (finding notice sufficient where it "described essential and relevant information in plain

terms, including … the terms of the Settlement Agreement … and the various rights of potential

class members, such as the right to opt out of the Settlement Class or object to the instant Final

Approval Motion").

In sum, this individual first-class mail to Settlement Class Members who could be

identified with reasonable effort and publication on an internet website was "the best notice that is

practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Comparable notice programs

are routinely approved by courts in this Circuit.  *See, e.g., In re LIBOR-Based Fin. Instruments

Antitrust Litig.*, No.  No. 11-md-2262-NRB, 2020 WL 6290596, at *3 (S.D.N.Y. Oct. 27, 2020).

## VI.    CONCLUSION

Considering the factors outlined in Federal Rule of Civil Procedure 23(e) and *Grinnell* in

their totality, and for the reasons set forth herein, the Settlement submitted in support of the

Motions for Preliminary and Final Approval of Class Action Settlement and for Attorneys' Fees,

Costs, and Service Awards, Plaintiffs respectfully request that the Court find that this Settlement

is fair, reasonable and adequate, grant final approval of the Settlement, grant certification of the

Settlement Class for settlement purposes; and enter the proposed Final Judgment dismissing with

prejudice the claims against Defendant.

Dated: February 18, 2025

Respectfully submitted,

*/s/ Mason A. Barney*

Mason A. Barney
Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel.:  212-532-1091
mbarney@sirillp.com
tbean@sirillp.com

Israel David
Madeline Sheffield
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Tel.: (212) 739-0622
Fax: (212) 739-0628
israel.david@davidllc.com
madeline.sheffield@davidllc.com

*Proposed Settlement Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on February 18, 2025, I caused a true and correct copy of the foregoing document to be filed electronically with the Clerk of the Court using this Court's CM/ECF system, which will automatically send notice of such filing to all counsel of record.

<u>*/s/ Mason A. Barney*</u>
Mason A. Barney