UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
REBECCA TUTEUR, ANTHONY VITI,          :
and MATTHEW NAPOLI, on behalf of        :
themselves and all others similarly situated, :
                                                            :               23 Civ. 3997 (GS)
                                  Plaintiffs,       :
                                                            :               OPINION & ORDER
                  - against -                      :
                                                            :
METROPOLITAN OPERA ASSOCIATION,  :
INC.,                                                    :
                                                            :
                                  Defendant.      :
------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

This class action lawsuit arises from a cybersecurity hacking attack on the computer systems of the Metropolitan Opera at Lincoln Center in New York.  The parties reached a settlement on behalf of the class (the "Settlement"), which the Court approved earlier this month following a fairness hearing.  (Dkt. No. 70).  Still to be decided is Plaintiffs' Motion for Approval of Attorneys' Fees and Service Awards ("Fee Application").  (Dkt. No. 62).  For the reasons set forth below, Plaintiffs' Fee Application is **GRANTED**.

## BACKGROUND

### A.  The Litigation

On May 3, 2023, Defendant Metropolitan Opera Association, Inc. ("Met Opera" or the "Met") disclosed that it had been the victim of a cyberattack that potentially compromised personally identifiable information ("PII") of the Met's current and former employees and others (the "Data Breach").  (Dkt. No. 18 ¶¶ 5,

24; Dkt. No. 60-3 at 1). Within weeks, two class action complaints were filed against the Met relating to the Data Breach: (1) one by Plaintiff Rebecca Tuteur, whose father was a Met employee, which was filed in this Court (*Tuteur v. Metropolitan Opera Ass'n, Inc.*, No. 23 Civ. 3997, Dkt. No. 1); and (2) one by Plaintiff Anthony Viti, a former Met employee, which was filed in New York State Supreme Court and subsequently removed to this Court (*Viti v. Metropolitan Opera Ass'n, Inc.*, No. 23 Civ. 5343, Dkt. No. 1). The *Tuteur* complaint was brought by the law firm of Siri & Glimstad LLP ("Siri & Glimstad") and the Viti complaint was brought by the law firm of Israel David LLC (the "David Firm").

On July 17, 2023, the Honorable Katherine Polk Failla consolidated the two actions and appointed Israel David of the David Firm as Interim Lead Class Counsel. (Dkt. No. 15). A Consolidated Class Action Complaint ("Complaint") was filed on August 3, 2023 by Plaintiffs Tuteur, Viti, and Matthew Napoli, a current Met employee. (Dkt. No. 18). The Complaint generally alleges that the Met Opera failed to implement reasonable security measures to prevent a data breach and failed to properly respond to, or timely notify class members about, the data breach after discovering it in December 2022. (*Id.* ¶¶ 4-6, 25-28, 37-43). Plaintiffs asserted claims for violations of the New York consumer fraud statute, negligence, breach of contract, breach of implied contract, and unjust enrichment. (*Id.* ¶¶ 103-69).

The Met Opera moved to dismiss certain of Plaintiffs' claims, and the motion was fully briefed by November 20, 2023. (Dkt. Nos. 28-29, 37-38). In the interim, the parties consented to my jurisdiction over this action for all purposes. (Dkt. No.

34).  At the same time, the parties engaged in discussions in an effort to resolve the case, including a full-day JAMS mediation held on November 20, 2023 before the Honorable Wayne Anderson (Ret.).  (Dkt. No. 39; Dkt. No. 55-1 at 3).  At an Initial Case Management Conference on January 22, 2024, the Court entered a Scheduling Order designed to accommodate the parties' ongoing settlement efforts and deferred consideration of the pending motion to dismiss.  (*See* Dkt. Entry dated Jan. 22, 2024; Dkt. No. 46).  At a status conference on June 25, 2024, the parties informed the Court that they had reached a settlement in principle, and the Court stayed further proceedings in the case.  (Dkt. No. 52).

## B.  The Settlement

On August 16, 2024, Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement.  (Dkt. No. 55).  After a hearing on September 18, 2024, at which the Court raised various questions regarding the Settlement, the parties agreed to make certain revisions to their agreement.  Plaintiffs then filed a revised motion on September 30, 2024, which included a copy of the parties' executed Settlement Agreement and Release ("Settlement Agreement").  (Dkt. No. 60).  On October 7, 2024, the Court entered an Order, pursuant to Fed. R. Civ. P. 23, granting preliminary approval of the proposed Settlement, provisionally certifying the Settlement Class, appointing Plaintiffs as Settlement Class Representatives, and appointing Angeion Group as Settlement Administrator, among other things.  (Dkt. No. 61).

Under the Settlement Agreement, every class member who submits a valid claim is entitled to any of the following four categories of relief: (1) reimbursement up to $750 for "ordinary losses" resulting from the Data Breach (*i.e.*, out-of-pocket expenses such as bank fees, phone charges, data charges, and fees for additional credit reports, credit monitoring, or identify theft insurance); (2) reimbursement up to $7,500 for "extraordinary losses" resulting from actual identity theft, fraud, or similar criminal victimization; (3) reimbursement for between one and four hours of "lost time" resulting from the Data Breach, at $25 per hour; and (4) two years of free credit monitoring services. (Dkt. No. 60-3 ¶¶ 42, 46). The Met Opera's aggregate exposure for the first three categories of claims is capped at $450,000. (*Id.* ¶ 52).

The Settlement Class is defined as: "All individuals who were mailed a notification by or on behalf of the Met Opera regarding the Met Opera Data Security Incident." (*Id.* ¶ 35). The Settlement Class includes tens of thousands of former and current employees of the Met Opera, dependents and beneficiaries of those employees, and vendors and donors of the Met Opera. (*Id.* at 1; Dkt. No. 60-1 at 2).

After the Court preliminarily approved the Settlement, Angeion mailed notice of the proposed Settlement to more than 46,000 Settlement Class Members. (Dkt. No. 65-3 ¶¶ 9-12). Angeion received 555 claims by February 4, 2025, the applicable deadline. (*Id.* ¶ 15). Of these, 42 Settlement Class Members claimed ordinary losses, 13 claimed extraordinary losses, 176 claimed reimbursement for lost time, and 412 requested credit monitoring services. (*Id.* ¶ 16).

Angeion received only two requests for exclusion from the Settlement (*i.e.*, opt-outs).  (*Id.* ¶ 17).  Two objections to the Settlement were submitted.  (*Id.* ¶ 18). Both objections primarily concern the amount of the proposed fee award to Plaintiffs' counsel, and are discussed further below.  (*See* Dkt. Nos. 65-1 & 65-2).

The Court held a fairness hearing on March 11, 2025.  No objectors appeared at the hearing.  On March 12, 2025, the Court entered an Order and Judgment granting final approval of the Settlement and final certification of the Settlement Class.  (Dkt. No. 70).  Pursuant to the suggestion of Plaintiffs' counsel at the hearing, the Court reserved decision on Plaintiffs' Fee Application.  (*Id.* at 1; *see* Dkt. No. 62).

### C.  The Fee Application

Plaintiffs filed the Fee Application on December 9, 2024.  (Dkt. No. 62).  The Fee Application seeks an award of $250,000 to Plaintiffs' counsel, comprised of $235,108.79 in attorneys' fees and $14,891.21 in expenses.  (*Id.*).  In addition, Plaintiffs seek service awards in the amount of $2,500 for each of the three Plaintiffs, for a total of $7,500 (the "Service Awards").  (*Id.*).

In support of the Fee Application, Plaintiffs submitted a memorandum of law (Dkt. No. 62-1 ("Fee App. Br.")) and a declaration from Israel David (Dkt. No. 62-2 ("David Decl.")).  Plaintiffs' counsel offered to provide detailed time records for the Court's *in camera* review (David Decl. ¶¶ 21, 24), and by Order dated February 28, 2025, the Court requested that counsel do so (Dkt. No. 66).  Plaintiffs submitted the time records *ex parte* on March 7, 2025.  (Dkt. No. 68).

In response to the Court's inquiries at the fairness hearing on March 11, 2025, Plaintiffs' counsel offered to make a further submission in support of the Fee Application.  Plaintiffs did so in a letter dated March 18, 2025.  (Dkt. No. 71).

## LEGAL STANDARDS

### A.  Attorneys' Fees and Costs

"In reviewing a class action settlement agreement for final approval, a district court must assess the reasonableness of the attorneys' fees." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008).  This obligation stems from Federal Rule of Civil Procedure 23(h), which provides that, in certified class actions, the court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

In so-called "common fund" cases—where the attorneys' fees come out of a common fund created to compensate class members for a common injury—courts use two distinct methods to determine whether the fees are reasonable.  *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  Under the "percentage of recovery" method, the court "calculates the fee award as some percentage of the funds made available to the Settlement Class."  *Hesse v. Godiva Chocolatier, Inc.*, No. 19 Civ. 972 (LAP), 2022 WL 22895466, at *11 (S.D.N.Y. Apr. 20, 2022).  Under the "lodestar" method, the court "'scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an

appropriate hourly rate.'" *Ferrick v. Spotify USA Inc.*, No. 16 Civ. 8412 (AJN), 2018 WL 2324076, at *9 (S.D.N.Y. May 22, 2018) (quoting *Goldberg*, 269 F.3d at 47).

Irrespective of the method chosen, any fee "may not exceed what is 'reasonable' under the circumstances." *Goldberg*, 269 F.3d at 47.  In conducting this reasonableness assessment, the court is guided by the following criteria, known as the "*Goldberg* factors": (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010).

Where the attorneys' fees and costs are not paid from a common fund—*i.e.*, where "the 'money paid to the attorneys is entirely independent of money awarded to the class'"—"the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Sow v. City of N.Y.*, 21 Civ. 533 (CM) (GWG), 2024 WL 964595, at *6 (S.D.N.Y. Mar. 5, 2024) (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)); *see Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996) (noting that the standards for attorney's fees under the common fund doctrine "do[] not apply . . . when fees are sought from the assets of the losing party, and the fee award would not come from a common fund nor be assessed against persons who have derived benefit from the lawsuit").

"Still, even where the defendant pays the attorneys' fees, a court must assess the reasonableness of the fee award, particularly because practical realities suggest that generally 'a defendant is interested only in disposing of the total claim asserted against it,' and not in 'the allocation between the class payment and the attorneys' fees.'" *Sony*, 2008 WL 1956267, at *15 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995)).

## B.  Service Awards

"'Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) (quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013)).  Such awards "often level the playing field and treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 253 (2d Cir. 2023).

The decision to grant a service award, and the amount of the award, rests within the discretion of the court. *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 721-22 (2d Cir. 2023).  In examining the reasonableness of a service award, courts consider: "[1] the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, [2] the time and effort expended by that plaintiff in assisting in the

8

prosecution of the litigation or bringing to bear added value (e.g., factual expertise),

[3] any other burdens sustained by that plaintiff in lending himself or herself to the

prosecution of the claim, and, of course, [4] the ultimate recovery." *Id.* at 721

(quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016)) (ellipsis

omitted). District courts "also 'often look to the sums awarded in similar cases, and

compare the named plaintiff's requested award to each class member's estimated

*pro rata* share of the monetary judgment or settlement.'" *Id.* (quoting *In re AOL*

*Time Warner ERISA Litig.*, No. 02 Civ. 8853, 2007 WL 3145111, at *2 (S.D.N.Y.

Oct. 26, 2007)).

## DISCUSSION

### A. Plaintiffs' Request for Attorneys' Fees and Costs

#### 1. Selection of Methodology

In their Fee Application, Plaintiffs principally rely on the "percentage of

recovery" method, employing lodestar analysis only as a "cross check." (Fee App.

Br. at 4-6; *see Hesse*, 2022 WL 22895466, at *10 (noting that percentage-of-recovery

is "the preferred method in the Second Circuit," with "the lodestar remain[ing]

useful as a 'cross check on the reasonableness of the requested percentage'" (quoting

*Goldberger*, 209 F.3d at 43))). According to Plaintiffs, the value of the settlement

benefits to Class Members under the Settlement Agreement totals $3,193,840.26.

(Fee App. Br. at 7). Thus, Plaintiffs contend, the requested fee award of

$235,108.79 amounts to "less than 10%" of the settlement value. (*Id.* at 6-7).

Plaintiffs' calculation of the value of the settlement to Class Members is questionable. The calculation includes the full $450,000 maximum payment obligation included as a cap in the Settlement Agreement (*id.* at 7), but now that Class Members have submitted their claims, we know the Met Opera will be paying less than that. Based on the number of claims submitted, and assuming each claim is for the maximum amount recoverable for the loss category in question (*i.e.*, $750 for ordinary losses, $7,500 for extraordinary losses, and $100 for lost time), Class Members will receive only $146,600 in reimbursement for these losses.[1] That is about one-third of the $450,000 cap.

The gap is even greater when it comes to the free credit monitoring services offered under the Settlement. According to Plaintiffs, these services have a retail value of $59.22 per claimant. (*Id.* at & n.2). Plaintiffs calculate the value of the credit monitoring services at more than $2.7 million, based on the 46,333 Class Members. (*Id.*). But only a sliver of the entire class—412 of the 46,333 members, or less than 1%—has signed up for the credit monitoring services. (Dkt. No. 65-3 ¶ 16). The value of the services to be provided to these 412 class members, assuming those services are worth $59.22 to each claimant, amounts to only $24,399.

---

[1] The $146,600 figure is the sum of the maximum amount recoverable for each loss category multiplied by the number of claims submitted in that category: $31,500 in ordinary losses ($750 x 42 claims) + $97,500 in extraordinary losses ($7,500 x 13 claims) + $17,600 in lost time reimbursements ($100 x 176 claims) = $146,600.

Hence, the total value of the benefits to be provided to Class Members under the Settlement Agreement is, at best, approximately $171,000. That amount is *less* than Plaintiffs' requested fee award of $235,108.79.

Plaintiffs argue that under the percentage of recovery method, fees should be awarded "'on the basis of the total funds made available, *whether claimed or not*.'" (Fee App. Br. at 6 (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007)) (emphasis supplied by Plaintiffs). But Judge Castel rejected a similar argument in evaluating another class action settlement arising from a data breach, explaining that "[t]he reasoning of *Masters* is premised on the existence of a common fund that included unclaimed portions to be distributed through the application of the cy pres doctrine." *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18 Civ. 8472 (PKC), 2022 WL 2063864, at *14 (S.D.N.Y. June 8, 2022). Reasoning that "any amount that is not paid to claimants does not confer a benefit to the class," Judge Castel ruled that, in calculating the fees award, he would consider only the sums to be paid to the class and not the aggregate cap under the settlement. *Id.* at *14-15; *see also Everetts v. Pers. Touch Holding Corp.*, No. 21 Civ. 2061 (JMA) (ARL), 2024 WL 227811, at *2 (E.D.N.Y. Jan. 22, 2024) (following *Hudson's Bay* and holding that, in calculating the fees award in a data breach case, "the Court will consider the monetary benefit that will be paid to the class and not the $3 million 'Aggregate Cap'").

Plaintiffs claim that *Hudson's Bay* is distinguishable because the parties here engaged in hard-fought negotiations over the amount of the cap in view of the Met

11

Opera's nonprofit status, whereas there was no evidence that that was the case in *Hudson's Bay*. (Tr. at 9:24-10:23; Dkt. No. 71 at 2-3; *see Hudson's Bay*, 2022 WL 2063864, at *14 (expressing concern that "the 'Aggregate Cap' of $2 million is an aspirational figure" and that "the parties could have agreed to an 'Aggregate Cap' of virtually any figure")). Plaintiffs also point to another data breach settlement in which Judge Failla awarded attorneys' fees of $321,179 even though the value of the payments and credit monitoring services provided to class members who submitted claims totaled only $42,275. (Tr. at 28:9-30:24; *see In re GE/CBPS Data Breach Litig.*, No. 20 Civ. 2903 (KPF) (S.D.N.Y.), Dkt. No. 119 at 1 (defendants' supplemental brief) & Dkt. No. 123 ¶ 15 (Final Judgment and Order of Dismissal)).[2]

Ultimately, the Court need not decide the valuation issue, for it need not—and does not—assess Plaintiffs' attorneys' fees under the percentage-of-recovery method. While the percentage method may be the preferred approach when considering common fund settlements, the Settlement here does not involve a common fund. It is, instead, a "claims-made" settlement, as Plaintiffs' counsel acknowledged at the fairness hearing. (Tr. 13:17-16:7.) As is clear from the structure of the Settlement, and as confirmed by counsel, the attorneys' fees award is not being paid from a common fund and the amount of the award will have no

---

[2] Plaintiffs assert that in *GE/CBPS*, Judge Failla "apparently declined to follow the ruling in *Hudson's Bay*." (Dkt. No. 71 at 4). There is no basis for that assertion. The Final Judgment and Order of Dismissal in *GE/CBPS* contains no indication that Judge Failla awarded fees on a percentage of recovery method, agreed with Plaintiff's $1.867 million valuation of the settlement, or disagreed with Judge Castel's ruling in *Hudson's Bay*. In fact, Judge Failla reduced Plaintiff's requested fees by one-third, just as Judge Castel had done in *Hudson's Bay*. *GE/CBPS*, No. 20 Civ. 2903, Dkt. No. 95 (Plaintiff's Motion for Fees (proposing $479,741 fee award)); *id.*, Dkt. No. 123 ¶ 15 (Final Judgment and Order of Dismissal (awarding $321,179.52 in fees)).

effect on what Class Members receive from the Settlement.  (Dkt. No. 60-3 ¶¶ 42-46, 80-83; Tr. at 25:17-22).  Rather, the requested fees represent a contractually agreed-upon negotiated amount and will be paid by the Met Opera.  (*See* Dkt. No. 60-3 ¶¶ 80-83).

"For a class settlement where fees are not paid from a common fund, do not detract from class recovery, and are paid because of a contractual provision, the Court's inquiry is a more relaxed reasonableness analysis."  *In re Canon U.S.A. Data Breach Litig.*, No. 20 Civ. 6239 (AMD) (SJB), 2024 WL 3650611, at *4 (E.D.N.Y. Aug. 5, 2024) (citing *McBean*, 233 F.R.D. at 392).  In such a case, "the Court can simply use the lodestar method."  *Id*.  In *Canon*, which was also a data breach case, Judge Bulsara did precisely that, obviating the need to resolve a dispute between plaintiffs and defendants over how to value the benefits to the class under the percentage-of-recovery method.  *See id*. at *3-4 ("The debate is interesting.  But it is academic.  For one thing, this is not a 'common fund' settlement for which a percentage-of-recovery approach would apply.").[3]

The Court finds Judge Bulsara's reasoning persuasive and will follow the same path here.  At the fairness hearing, the Court asked Plaintiffs' counsel whether they objected to use of the lodestar method rather than the percentage-of-recovery method, and they did not.  (Tr. at 17:5-15).  Accordingly, the

---

[3] As Judge Bulsara also noted, even when considering a common fund settlement, the Court has discretion to apply the lodestar rather than the percentage approach.  *Id*. at *4; *see Masters*, 473 F.3d at 436 ("[C]ourts may continue to use the lodestar approach alone in calculating attorneys fees in common fund cases.").

Court proceeds to evaluate Plaintiffs' requested fees under a lodestar analysis and the principles applied in non-common fund class action settlements.

### 2.  Reasonableness of Requested Fees

As noted above, while the Court's role in overseeing the attorneys' fees award in this case may be reduced because the fees will not be paid from a common fund, *Sow*, 2024 WL 964595, at *6, the Court still "must assess the reasonableness of the fee award." *Sony*, 2008 WL 1956267, at *15.  The negotiation of a fee agreement "is generally encouraged." *Sow*, 2024 WL 964595, at *6 (quoting *Sony*, 2008 WL 1956267, at *15).  In assessing the reasonableness of a negotiated fee, courts look to certain procedural factors, including whether "'the fee was negotiated only after agreement had been reached on the substantive terms of the Settlement benefiting the class'" and whether "'the attorneys' fees were negotiated at arm's length.'"  *Id*. at *6-7 (quoting *Sony*, 2008 WL 1956267, at *15).

Here, Plaintiffs' counsel has attested that the parties "did not discuss the payment of attorneys' fees, costs, expenses and/or service awards to Settlement Class Representatives until after the substantive terms of the Settlement had been agreed upon."  (Dkt. No. 55-2 ¶ 34 (Declaration of Israel David in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement); *see also* Tr. at 25:1-16 (representation by Plaintiffs' counsel at fairness hearing confirming this fact) and *id.* at 26:8-12 (Defendant's counsel confirming accuracy of representation)).  Further, the agreed-upon fees amount appears to be the product of arm's length negotiations.  Plaintiffs' counsel has affirmed that the Settlement

Agreement followed "months of continued adversarial and extensive arm's length settlement negotiations" (Dkt. No. 55-2 ¶ 6), and nothing in the record suggests otherwise. A review of Plaintiffs' counsel's time records reveals numerous time entries reflecting the parties' negotiations. *See Sow*, 2024 WL 964595, at *7 (citing time records to confirm arm's length negotiations).

The substantive reasonableness of the requested fee award is "tested by using the lodestar method of calculating reasonable attorneys' fees." *Sow*, 2024 WL 964595, at *7 (quoting *Sony*, 2008 WL 1956267, at *16). The lodestar—which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case"—creates a "presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation omitted). "A reasonable hourly rate is determined by the 'prevailing market rate,' that is, the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Grice*, 363 F. Supp. 3d at 410 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). In determining the compensable hours, the court "must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case," and "should exclude from the lodestar calculation excessive, redundant or otherwise unnecessary hours." *Hancock v. I.C. Sys., Inc.*, 592 F. Supp. 3d 250, 256-57 (S.D.N.Y. 2022) (citations omitted). "'The party seeking an award of [attorneys'] fees should submit evidence supporting the hours worked and the rates claimed.'" *Id.* at 254 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (cleaned up).

The Court first considers the David Firm's and Siri & Glimstad's hourly rates. The two partners involved charged $1,150 and $975 per hour, respectively; rates for associates and special counsel ranged from $575 to $725 per hour; paralegals were billed at $240 per hour; and a "client intake specialist" was billed at $325 per hour. (David Decl. ¶¶ 21, 24). These rates are on the higher side. In the *Canon* data breach case, Judge Bulsara, applying case law in the Eastern District of New York, recently found hourly rates that were even lower than these to be "excessive" and reduced them to $600 for partners, $350 for associates, and $100 for paralegals. *Canon*, 2024 WL 3650611, at *5-7.

On the other hand, in the *Hudson's Bay* data breach case, Judge Castel found rates similar to those charged by the David Firm and Siri & Glimstad to be "consistent with the higher end of the hourly rates that have been deemed reasonable in similar class action settlements over the past ten years, both in this district and others," and, thus, "reasonable." *Hudson's Bay*, 2022 WL 2063864, at *19 (approving rates for partners in the $900 to $1,000 range, with other partners billing at rates beginning at $600; for associates ranging from $350 to $650, with some senior associates billing at $700; and for paralegals from $150 to $400); *see also In re Onix Grp., LLC Data Breach Litig.*, Civ. Action No. 23-2288-KSM, 2024 WL 5107594, at *16 (E.D. Pa. Dec. 13, 2024) & Dkt. No. 47-6 (finding hourly rates of up to $1,057 for partners and between $575 and $725 for Siri & Glimstad associates to be reasonable).

16

Turning to the number of hours, the two Plaintiffs' law firms billed a total of 591.9 hours.  (David Decl. ¶¶ 17, 21, 24).  That does not seem inordinately high for a case of this nature.  It is true that the case settled at a relatively early stage, prior to any meaningful discovery.  Nonetheless, counsel expended substantial effort investigating the case and drafting complaints; defending against the Met Opera's motion to dismiss; preparing for conferences with the Court; preparing for and participating in the mediation; negotiating the Settlement and Settlement Agreement with defense counsel; preparing the motion for preliminary approval; coordinating the retention of Angeion and overseeing Angeion's work; and responding to Settlement Class Members' inquiries.  (*Id.* ¶ 13).  *See Canon*, 2024 WL 3650611, at *6 (stating that "[a]s far as complex data breach class actions go, approximately 1,000 hours in total is not, by any means, unusually high or excessive given the stage of the resolution" (although there was at least some discovery in that case)).

The Court has reviewed *in camera* the detailed time records supplied by Plaintiffs' counsel, and did not detect any significant duplication or other inefficiencies.  Although two law firms were involved, only seven lawyers worked on the case.  *Compare id*. at *5 (five law firms and 18 lawyers).  Counsel represents that they "made concerted efforts to carefully assign work so as to avoid duplication of efforts and have the work completed by the appropriate level of attorney."  (David Decl. ¶ 27).  For example, only one lawyer attended conferences with the Court.

(Tr. at 22:17-19). The firms also coordinated drafting Plaintiffs' submissions, such that only one firm would be working on a brief at any given time. (*Id.* at 22:9-16).

Based on the hourly rates described above, Plaintiffs' lodestar for the 591.9 hours expended amounts to $439,713.50—a negative multiplier of approximately 1.9. (David Decl. ¶ 17). That amount includes time spent on the case up through November 25, 2024. (*Id.*). It does not include any time spent preparing the papers in support of Plaintiffs' motion for final approval of the Settlement; preparing the Fee Application; preparing for and attending the fairness hearing; or helping to ensure the proper distribution of proceeds to Settlement Class Members. (*Id.* ¶ 14). At the fairness hearing, counsel estimated that if the unbilled time as of the date of the hearing were included, the lodestar would be approximately $490,000. (Tr. at 3:21-4:7).

Considering all the circumstances, the Court finds that the lodestar method justifies Plaintiffs' requested fee award of $235,108.79. While, as noted above, the reasonableness of the hourly rates could be questioned, the Court need not resolve that question. Even if, for the sake of argument, one were to reduce the hourly rates across the board by 25%, the lodestar still would amount to $329,785. This would remain substantially in excess of the $235,108.79 sought, *i.e.*, the multiplier would still be negative. *See, e.g.*, *Torretto v. Donnelley Fin. Sols., Inc.*, No. 20 Civ. 2667 (GHW), 2023 WL 123201, at *4 (S.D.N.Y. Jan. 5, 2023) (approving agreed-upon fees and expenses in data breach case that were "significantly less than Class Counsel's lodestar for their work"); *Gruber v. Gilbertson*, 647 F. Supp. 3d

18

100, 128 (S.D.N.Y. 2022) (negative multiplier "demonstrates that a fee award in the amount plaintiffs' counsel requests would not constitute anything approaching a windfall"); *Guevoura Fund Ltd. v. Sillerman*, No. 15 Civ. 7192 (CM), 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (negative multiplier "militates very in favor of the reasonableness of the fee request").

Reinforcing that conclusion, neither the lodestar nor Plaintiffs' fee request appears excessive in comparison to other data breach cases. To the contrary, both compare favorably. *See Canon*, 2024 WL 3650611, at *5 (lodestar as submitted of $753,879, fee award of $600,000); *Torretto*, 2023 WL 123201, at *4 & Dkt. No. 157 at 10 (lodestar of $1,264,007, fee award of $700,000); *Hudson's Bay*, 2022 WL 2063864, at *5 (lodestar of $3,161,778, fee award of $897,866); *GE/CBPS*, No. 20 Civ. 2903 (KPF), Dkt. No. 101 at 13 & & Dkt. No. 123 ¶ 15 (lodestar of $440,337, fee award of $321,179). The Settlement delivers substantial benefits to the class, and the reaction to the Settlement by the class has generally been positive. Some 555 Class Members submitted claims. (Dkt. No. 65-3 ¶ 15). Only two Class Members opted out and only two filed objections. (*Id*. ¶¶ 17-18). These considerations further support the reasonableness of the requested fee award. *See Canon*, 2024 WL 3650611, at *9 ("[T]he positive reaction of the class to the settlement weigh[s] in favor of approving the fee.").

Accordingly, the Court concludes that Plaintiffs' unopposed and agreed-upon fee request of $235,108.79 easily satisfies the "more relaxed reasonableness" standard, *id*. at *4, applicable to non-common fund settlements. The Court also

finds that Plaintiffs' request for reimbursement of $14,891.21 in expenses (which consists mainly of JAMS mediation fees) is adequately supported and reasonable. (David Decl. ¶ 29). Thus, the requested award of $250,000 in attorneys' fees and costs is approved.

### 3. Objections

In analyzing the reasonableness of Plaintiffs' Fee Application, the Court has considered the objections submitted by Class Members Frank Goldsmith (Dkt. No. 65-1) and Phillip L. Radoff (Dkt. No. 65-2). In his November 11, 2024 letter, Mr. Goldsmith objected to the proposed fees "without some proof of the time expended by counsel and disclosure of a reasonable hourly rate." (Dkt. No. 65-1). After that letter was sent, Plaintiffs filed their Fee Application, which included a declaration from counsel attesting to the time expended by counsel and their hourly rates. (Dkt. No. 62 (filed Dec. 9, 2024)). Thereafter, Plaintiffs' counsel submitted detailed time records which the Court has reviewed *in camera*, as described above. Therefore, since the proof Mr. Goldsmith sought has now been supplied, the Court views his objection as moot.

Mr. Radoff objected to the requested fees on the ground that the amount is "grossly disproportionate" to the aggregate liability cap of $450,000 and "should be reduced to not more than 10% of the actual liability." (Dkt. No. 65-2). For the reasons discussed above, the Court does not agree that the fee amount is disproportionate considering, *inter alia*, the benefits to the class, the work performed by counsel, the Met's agreement to pay the requested fees, the generally

positive reaction of the class to the Settlement, and the legal principles governing the Court's evaluation of Plaintiffs' Fee Application.

While the Court appreciates that Messrs. Goldsmith and Radoff took the time to submit objections and offer their views, both objections are, after careful consideration, overruled.

**B. Plaintiffs' Request for Service Awards**

The Court also approves the requested Service Awards in the amount of $2,500 each for Plaintiffs Tuteur, Viti, and Napoli.

According to Plaintiffs' counsel, the Settlement Class Representatives' efforts on behalf of the class included "assisting in the investigation of the case, maintaining contact with Settlement Class Counsel, reviewing the pleadings, answering Settlement Class Counsel's questions, communicating with Settlement Class Counsel during and following the Settlement negotiations, and reviewing the terms of the Settlement Agreement." (David Decl. ¶ 31). Plaintiffs' counsel further states that the Settlement Class Representatives "put their personal reputation at risk" by agreeing to publicly serve as named Plaintiffs in a lawsuit against the Met Opera. (*Id.*; *see also* Tr. at 27:8-15).

Like Plaintiffs' attorneys' fees, the Service Awards will not be payable from a common fund and will not reduce the amount of benefits to be provided to the other Class Members. (Dkt. No. 60-3 ¶ 77). Also like the attorneys' fees, the Service Awards were "negotiated after the relief for the Settlement Class Members was negotiated and agreed upon." (*Id.*). The amount of the Service Awards is consistent

with service awards approved in other, similar class actions.  *See, e.g.*, *Torretto*, 2023 WL 123201, at *5 (approving service awards of $2,500 each for three named plaintiffs in data breach case).  As such, the requested Service Awards are reasonable and warrant approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs' application for attorneys' fees, costs, and expenses in the amount of $250,000 is **GRANTED**.  Payment shall be made pursuant to the terms of the Settlement Agreement.

This Order, together with the Court's Order and Judgment granting final approval of the Settlement (Dkt. No. 70), resolves all claims and issues in this action.  This matter is hereby **DISMISSED** with prejudice and without costs expect as provided herein.  The Court will retain jurisdiction over the subject matter and the parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

**SO ORDERED.**

Dated:      New York, New York
            March 27, 2025

_____
GARY STEIN
United States Magistrate Judge

22